

# SYNOPSIS OF THE CASE[1]

**2025 MT 3**, DA 23-0225: **MONTANA ENVIRONMENTAL INFORMATION CENTER and SIERRA CLUB,** Plaintiffs and Appellees, v. **MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY and NORTHWESTERN CORPORATION,** Defendants and Appellants.

The Montana Supreme Court has agreed with a Yellowstone County District Court ruling that the Department of Environmental Quality (DEQ) did not conduct an adequate environmental review of NorthWestern Corporation's natural-gas-fueled power plant near Laurel before it issued an air quality permit. The Court held that the agency should have considered greenhouse gas emissions in its review and that its analysis of the facility's lighting impacts also was deficient.

But the Supreme Court reversed the District Court's decision to vacate the permit. The result of the decision is that DEQ will be required to conduct further evaluation of the plant's impacts on the Montana environment, but the agency's decision to issue the air quality permit will stand.

The Plaintiffs, MEIC and the Sierra Club, sued NorthWestern and DEQ in 2021 after DEQ issued a permit allowing NorthWestern to construct, operate, and maintain the Laurel Generating Station (LGS) near Laurel, Montana. The District Court found the environmental review satisfactory in its consideration of noise impacts from the plant, and the Supreme Court affirmed that ruling. The District Court found fault, however, with the agency's rejection of concerns about lighting from the plant and its dismissal of comments about greenhouse gas (GHG) emissions.

The District Court vacated the air quality permit and required DEQ to redo those analyses. On later requests by NorthWestern and DEQ, the District Court put a hold on the portion of its ruling that invalidated the permit, allowing construction of the plant to continue while the case was appealed. The Laurel Generating Station has since been fully completed.

On appeal, the Montana Supreme Court emphasized that Montana's Environmental Policy Act (MEPA) expresses the Legislature's intent that state agencies fully consider all aspects of a proposal and ensure that "the public is informed of the anticipated impacts in Montana of potential state actions." The fact that GHG emissions of the Laurel facility may reach far outside Montana and are not presently governed by specific air quality standards does not allow the agency to completely ignore whether and to what extent they may result in adverse effects on Montana's environment.

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

The Court noted that it has not held, and did not hold in this case, that DEQ is required to analyze GHG emissions for every potential permitting action. But in a case like this one, which undisputedly involves a significant amount of $CO2_e$ emissions (nearly 770,000 tons annually) from a fossil fuel Electric Generating Unit and generated hundreds of public concerns regarding potential impacts from those emissions, MEPA requires DEQ to analyze the direct, secondary and cumulative impacts of this permitted action. Even without specific state or federal standards in place for greenhouse gas emissions, DEQ is still required to conduct an adequate MEPA analysis that comports with MEPA's unique role in protecting Montanans' constitutional right to a clean and healthful environment.

The Court reversed the District Court's decision to vacate the permit, however, because MEPA contains specific requirements that must be met before that kind of relief may be granted to a party challenging an agency's environmental review. In this case, the District Court did not apply the requirements of the statute, and the Plaintiffs had not argued that those requirements could now be satisfied were the case returned to the District Court for further consideration. It therefore reinstated the permit and sent the case back to DEQ for further evaluation.

Two Justices agreed with the Court's determination to reverse the vacatur of the permit but would conclude that, under the particular circumstances of this case and without a regulatory structure in place for GHG emissions, further MEPA review was not called for.

Two other Justices agreed with the Court that DEQ's MEPA review was insufficient, but they disagreed with the decision to reinstate the permit and allow the plant to continue operating. They would have returned the case to the District Court to further consider the statutory requirements for vacating the permit while additional environmental analysis is completed. The Justices agreed with the DEQ's concession that, in the event the Court found a MEPA violation, the matter could be remanded for the trial court to make the necessary statutory findings in support of its vacating the permit. Further, the Justices noted that the Court, in rendering its decision, addressed many of the statutory requirements. A remand for the District Court to enter findings, as is often done on appeal, would have provided a remedy for the MEPA violation.